UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| CLIFTON WILLIAMS, Jr. | : | |
| Debtor | : | Bankruptcy No. 06-10928BF |

.................................................

MEMORANDUM

.................................................

The chapter 13 debtor, Clifton Williams, Jr. has filed a "motion for a stay,"
which has triggered two objections.  As will be discussed, at bottom this contested matter
involves differing interpretations propounded by the parties of new bankruptcy law
provisions found in 11 U.S.C. § 362(c)(3).  An evidentiary hearing was held, and the
remaining interested parties have submitted post-hearing memoranda.  This contested
matter is now ripe for adjudication.

I.

The following relevant facts were adduced at the hearing.

On March 6, 2006, the above-captioned debtor filed a voluntary petition in
bankruptcy under chapter 13.  The debtor had filed a prior chapter 13 case on September
26, 2005, docketed at Bankr. No. 05-33239.  That earlier case had been dismissed on
November 14, 2005, after notice, because of the debtor's failure to file all required
documents, such as his chapter 13 plan, his bankruptcy schedules and his statement of
financial affairs.  The debtor blames his then-attorney for dismissal.

The second chapter 13 petition was filed pro se.  On April 10, 2006, the

debtor retained different counsel who entered his appearance.  On April 11, 2006, the

debtor (through his counsel) filed the instant motion, requesting "that a stay be imposed

with respect to all [creditors] . . . in order that the Debtor has an opportunity to file and

proceed to confirm a plan which will pay them all in full[.]"  Motion, ¶ 8.

The evidence revealed that this debtor owns five real properties.  Ex. D-1

(schedule A).  One—located at 8557 Fayette Street, Philadelphia, Pennsylvania—is his

residence, held as tenants by the entireties with his wife.  Four other Philadelphia

properties—located at 5425 North 11th Street; 110 West Champlost Street; 2735 Opal

Street; and 4620 Oakmont Street—  were purchased by him (beginning in 2002) for

investment after those properties had been foreclosed upon by their lenders.

The debtor is employed as a mail handler for the United States Postal

Service and has been so employed for many years.  He purchased these four distressed

properties intending to make money by renting and/or reselling them at a profit.  For some

of the properties, he made modest renovations after his purchase.  For others, their

condition remains the same.

The debtor purchased these investment properties with borrowed funds

from different lenders, using the properties as collateral.  The debtor offered differing

reasons that these properties have not generated sufficient income to cover his mortgage

payments.[1]  However, it is clear that he has fallen behind in his mortgage payments on at

least some, if not all, of these properties.

---

[1]Insofar as the Oakmont property is concerned, the debtor offered an opaque
explanation that this property is titled in his name but is actually owned by someone else.  He
seeks no relief from creditors as to this realty.

2

On his bankruptcy schedules, the debtor discloses that CitiMortgage Corp. holds a mortgage lien on the Champlost Street realty; National City Mortgage Co. holds a mortgage lien on the 11th Street property; Prime Funding Co. holds the mortgage on the Opal Street realty; and Washington Mutual Home Loans holds the mortgage on his Fayette Street residence. Ex. D-1 (schedule D). Both the Champlost Street and 11th Street properties had been scheduled for sheriff sales prior to the debtor's March 2006 bankruptcy filing. The latter property was sold at foreclosure after the debtor's bankruptcy filing, and National City has filed a motion to annul the bankruptcy stay, which motion is now pending.

The debtor has proposed a plan calling for him to pay $100 per month to the chapter 13 trustee "for 36 months or until the sales of property take place as described in paragraph 3 of this plan." Ex. D-1 (debtor's proposed plan). The plan further provides that the debtor will obtain an agreement of sale for the 11th Street property by November 30, 2006 for an amount not less than $85,000. The secured claim of National City Mortgage Co. (estimated by the debtor in his schedules to be $45,000) will be repaid in full from the proceeds of sale, with the balance used to pay other creditors. Id., ¶ 3. The plan may also provide that the debtor will obtain an agreement of sale on the Champlost Street property by November 30, 2006, in an amount not less than $90,000. Id., ¶ 3.[2] Citi Mortgage Corp. (estimated by the debtor to hold a claim in the amount of $35,000) would be repaid in full from the proceeds of this sale. Id., ¶ 3. Prime Funding Corp, which

---

[2]The debtor's plan does not actually require the sale of Champlost Street. Paragraph 3 states in one sentence that he "anticipates" such a sale; and in another sentence proposes that his case "will be subject to dismissal" if no agreement of sale is signed either as to 11th Street or Champlost Street by "November 390 [sic], 2006." Id., ¶ 3.

holds an estimated $13,000 mortgage on the Opal Street realty, will be repaid from the proceeds of sale from the other two properties. Id., ¶ 4. The debtor "will also consider selling [the Opal Street property] if necessary." Id., ¶ 4.

While the debtor's plan calls for the eventual sale of one or more of his properties—there is no deadline for the sale of any property, only a deadline for signing an agreement of sale—he testified that he had not engaged a real estate agent by the date of the hearing on this motion.   Moreover, he had unsuccessfully sought to sell some of these properties on his own.

The debtor has offered no expert opinion as to the value of these properties. He paid $30,000 for the 11th Street realty in 2002, with repairs totaling $5,000; he asserts that the realty is now worth $90,000. As to Champlost Street, he paid $30,000 for the realty in 2003 and, after $1,000 in repairs, opines that the realty is presently worth $110,000. Finally, he purchased the Opal Street realty in 2004 for about $12,000, and the debtor values it, without any improvements or repairs, at $50,000. Ex. D-1 (schedule A).

II.

A.

At the hearing on this contested matter, CitiMortgage, Inc., Prime Funding Corp. and National City Mortgage Co. all opposed any relief being afforded the debtor that would prevent them from immediately foreclosing upon their collateral. Thereafter,

CitiMortgage entered into a settlement of its objection with the debtor, which settlement has been approved.  Thus, only two objections remain.[3]

The position of these two objecting creditors is straightforward.  They contend that 11 U.S.C. § 362(c)(3)(A) provides that whenever an individual files a bankruptcy case within one year from the dismissal of a prior case, the automatic stay in section 362(a) is imposed upon creditors only for thirty days from the date of the commencement of the second case.  Within that thirty-day period, the debtor may request an extension of the stay for cause shown.  When though, as here, the thirty-day period ends without any request by the debtor for extension of the bankruptcy stay, then the automatic stay expires, creditors are free to exercise their non-bankruptcy law rights to foreclose upon their collateral, and the bankruptcy court has no power to grant the debtor any relief.

The debtor's contentions are dual and overlapping.

First, he maintains that section 362(c)(3)(A) only causes a portion of the bankruptcy stay to terminate after thirty days: the stay as to the debtor and property of the debtor.  He argues that section 362(c)(3) does not affect the bankruptcy stay as to "property of the bankruptcy estate."  The 11th Street and Opal Street properties are

---

[3]To the extent the debtor's post-hearing memorandum seeks to prevail over these two objectors by default for their failure to file a written objection, I must disagree for a number of reasons.  First, the evidentiary hearing was scheduled on an expedited basis and, by virtue of Local Bankr. R. 9014-3(i), no answer is required unless the court directs.  Given the abbreviated time frame involved, I did not direct any written response.  Second, Prime Funding did file an answer in opposition on April 20, 2006, just three days after the date fixed for service of the motion, and prior to the hearing.  And third, the debtor has only raised the issue of default after the hearing on the merits, at which all parties in interest participated.  Given the written answers that were filed prior to the hearing, the debtor should have been prepared to, and did proceed, on the merits.

properties of the bankruptcy estate under 11 U.S.C. §§ 541(a) and 1306. See, e.g., In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004); In re Mongiove, 9 B.R. 34, 35 (Bankr. S.D. Fla. 1980). Accordingly, the debtor contends that even though the thirty-day period expired prior to the filing of his motion, the automatic stay continues to prevent these two secured creditors from foreclosing upon their collateral.

Alternatively and additionally, to the extent that the bankruptcy stay expired after thirty days, the debtor maintains that, under these circumstances and emphasizing the debtor's original pro se status and his proposed chapter 13 plan, this court has the power under 11 U.S.C. § 105(a) to reimpose a stay as to all creditors and should do so.

As all parties agree that the provisions of section 362(c)(3) apply in this dispute, since the debtor's 2005 case was dismissed within one year of his filing the instant chapter 13 petition, I shall first address the scope of this new statute.

B.

The Supreme Court has repeatedly instructed that statutory interpretation of bankruptcy legislation begins with the language of the statute itself. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd— is to enforce it according to its terms." Hartford Underwriters Insurance Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000); see, e.g., Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989); In re Price, 370 F.3d 362, 368 (3d Cir. 2004). Only if the statute is ambiguous or unclear should a court consider legislative history for interpretive guidance.

6

Ross v. Hotel Employees and Restaurant Employees International Union, 266 F.3d 236,

245 (3d Cir. 2001); see also Garcia v. United States, 469 U.S. 70, 75 (1984).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,

enacted on April 20, 2005 and effective on October 17, 2005, Pub. L. 109-8, added 11

U.S.C. § 362(c)(3) to the Bankruptcy Code.  This statute states:

> c) Except as provided in subsections (d), (e), (f), and (h) of
> this section—
>
> ***
>
> (3) if a single or joint case is filed by or against debtor who is
> an individual in a case under chapter 7, 11, or 13, and if a
> single or joint case of the debtor was pending within the
> preceding 1-year period but was dismissed, other than a case
> refiled under a chapter other than chapter 7 after dismissal
> under section 707(b)---
>
>> *(A) the stay under subsection (a) with respect to*
>> *any action taken with respect to a debt or*
>> *property securing such debt or with respect to*
>> *any lease shall terminate with respect to the*
>> *debtor on the 30th day after the filing of the*
>> *later case;*
>>
>> (B) on the motion of a party in interest for
>> continuation of the automatic stay and upon
>> notice and a hearing, the court may extend the
>> stay in particular cases as to any or all creditors
>> (subject to such conditions or limitations as the
>> court may then impose) after notice and a
>> hearing completed before the expiration of the
>> 30-day period only if the party in interest
>> demonstrates that the filing of the later case is in
>> good faith as to the creditors to be stayed; and
>>
>> (C) for purposes of subparagraph (B), a case is
>> presumptively filed not in good faith (but such
>> presumption may be rebutted by clear and
>> convincing evidence to the contrary)---
>>
>>> (i) as to all creditors, if--

(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to---

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded---

(aa) if a case under chapter 7, with a discharge; or

(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor[.]

(emphasis added).

The "subsection (a)" referred to in section 362(c)(3)(A) is section 362(a).

Subsection (a) sets forth the range of the automatic stay.[4]  Subsection (b) identifies

_____

[4]That subsection provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the

(continued...)

exceptions to the reach of subsection (a).  Subsection (c) lists the circumstances in which the bankruptcy stay either terminates or does not arise without the necessity of a court order to that effect.

In interpreting section 362(c)(3)(A), a number of courts have contrasted the language used by Congress therein with the provisions of section 362(a).  Upon the filing of a bankruptcy petition, section 362(a)(1) stays pre-bankruptcy actions "against the debtor."  Subparagraph (a)(2) stays enforcement of judgments "against the debtor or against property of the estate."  Subparagraph (a)(3) stays actions to obtain possession of "property of the estate."  Subparagraph (a)(4) enjoins actions to create or perfect liens "against property of the estate."  Subparagraph (a)(5) enjoins actions involving prepetition liens "against property of the debtor."  Subparagraph (a)(6) stays collection actions "against the debtor."  Subparagraph (a)(7) enjoins setoff involving "any claim

---

[4](...continued)
commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

10

against the debtor." And subparagraph (a)(8) stays Tax Court litigation involving

prepetition "tax liability of a debtor." Therefore, the bankruptcy stay created by section

362(a) protects, in its various subparagraphs, three categories: the debtor, the debtor's

property, and property of the estate.

The language Congress used in section 362(c)(3)(A) provides for the

expiration upon thirty days of the stay concerning "debt or property securing such debt"

but only "with respect to the debtor." Given the wording and categorization found in

section 362(a), termination of the stay with respect to the debtor means that: suits against

the debtor can commence or continue postpetition because section 362(a)(1) is no longer

applicable; judgments may be enforced against the debtor, in spite of section 362(a)(2);

collection actions may proceed against the debtor despite section 362(a)(6); and liens

against the debtor's property may be created, perfected and enforced regardless of section

362(a)(5). However, since section 362(c)(3)(A) does not purport to terminate the stay as

to estate property—a concept defined by section 541(a), and which property is distinct

from the debtor or the debtor's property—the stay provisions imposed by sections

362(a)(3), (a)(4), and part of (a)(2), expressly protecting property of the estate, do not

expire after thirty days. See, e.g., In re Harris, 2006 WL 1195396, *3 (Bankr. N.D. Ohio

2006); In re Moon, 339 B.R. 668, 671 (Bankr. N.D. Ohio 2006); In re Jones, 339 B.R.

360 (Bankr. E.D.N.C. 2006); In re Johnson, 335 B.R. 805 (Bankr. W.D. Tenn. 2006); see

also In re Baldassaro, 338 B.R. 178, 185 (Bankr. D.N.H. 2006).

A similar conclusion had been reached by a commentator even before the

provisions of section 362(c)(3) became effective in October 2005. See Napoli, The Not-

So-Automatic Stay: Legislative Changes to the Automatic Stay in a Case Filed by or

11

Against an Individual Debtor, 79 Am. Bankr. L.J. 749, 767 (2005).  Moreover, this literal

reading of the statute is strongly supported by 11 U.S.C. § 362(c)(4)(A)(i), also enacted in

April 2005.  See In re Harris, 2006 WL 1195396, at *4; In re Moon, 339 B.R. at 671.

        Section 362(c)(4) applies whenever an individual debtor had two or

more cases dismissed pending within the year prior to his latest filing.  In that instance,

Congress directed in clause (i) that "the stay under subsection (a) shall not go into effect

upon the filing of the later case."  If Congress had intended in section 362(c)(3)(A) that

the entire automatic stay created by section 362(a) be terminated after thirty days, and not

just the bankruptcy stay as to the debtor and his property, it would have used the same

language as found in section 362(c)(4)(A)(i), promulgated at the same time.  See In re

Harris, 2006 WL 1195396, at *4; In re Moon, 339 B.R. at 671.  "[W]here Congress

includes particular language in one section of a statute but omits it in another section of

the same Act, it is generally presumed that Congress acts intentionally and purposely in

the disparate inclusion or exclusion."  Russello v. United States, 464 U.S. 16, 23 (1983)

(quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)); see

generally Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 174 (3d Cir. 2005).[5]

---

[5]In a recent non-precedential decision, the Third Circuit Court of Appeals
observed that this principle of statutory construction should not be utilized when to do so would
ignore other related provisions of the statute.  In re DeNofa, 124 Fed. Appx. 729, 731 (3d Cir.
2005).  In this instance, at least three other portions of section 362, in addition to section
362(c)(4), support the conclusion that Congress intended a distinction between terminating the
stay as to property of the estate, and terminating the stay as to the debtor and property of the
debtor.

      First, section 362(e)(1) provides in part:

      Thirty days after a request under subsection (d) of this section for
      relief from the stay of any act *against property of the estate under*

                                   (continued...)

Finally, construction of section 362(c)(3)(A) as written does not lead to an

absurd result.  See generally Lamie v. United States Trustee, 540 U.S. at 536-38.[6]  In

_____

> [5](...continued)
> *subsection (a) of this section*, such stay is terminated with respect
> to the party in interest making such request, unless the court, after
> notice and a hearing, orders such stay continued in effect pending
> the conclusion of, or as a result of, a final hearing and
> determination under subsection (d) of this section.

(Emphasis added.)  This provision terminates the stay only as to property of the estate if a timely resolution of a creditor's lift-stay motion does not occur.

Second, section 362(c)(1) provides:

> (c) Except as provided in subsections (d), (e), (f), and (h) of this
> section–
>
> (1) the stay of an act *against property of the estate under
> subsection (a)* of this section continues until such property is no
> longer property of the estate[.]

(Emphasis added.)  Again, the stay against property of the estate only is terminated in the event of abandonment or other circumstances in which property leaves the estate.

Finally, section 362(h)(1), also enacted in April 2005, provides as to personal or leased property:

> In a case in which the debtor is an individual, *the stay provided by
> subsection (a) is terminated with respect to personal property of
> the estate or of the debtor* securing in whole or in part a claim, or
> subject to an unexpired lease, and such personal property shall no
> longer be property of the estate if the debtor fails within the
> applicable time set by section 521(a)(2) . . .

(Emphasis added.)  If terminating the stay as to the debtor's property also terminates the stay as to estate property, the language of this subsection is redundant.

_____

[6]Nor do I find section 362(c)(3)(A) to be ambiguous, even though it is awkwardly written.  See In re Lamie, 540 U.S. at 534.  "[A] provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive."  In re Price, 370 F.3d at 369.  For the reasons stated in the text, the language in this statutory provision is clear.

(continued...)

13

permitting creditors to proceed after thirty days (unless directed otherwise by court order) against the debtor and the debtor's property, but not against property of the estate, Congress has balanced competing interests.  Moreover, even a partial termination of the bankruptcy stay established by section 362(a) can have meaningful consequences in certain circumstances.

First, subsection (c) applies in all bankruptcy cases, including chapter 7 cases.  By continuing to protect estate property in section 362(c)(3), Congress was allowing chapter 7 trustees the normal opportunity to determine, even in instances where an individual debtor has filed a second case, whether there is non-exempt equity in property of the estate that could be liquidated for the benefit of creditors.  In balancing the respective interests of an individual secured creditor against creditors as a whole, Congress apparently decided that the concerns of abusive bankruptcy filings as to secured creditors were less acute in instances of second filings within one year, as opposed to third filings.  Therefore, in the second filing circumstance, secured creditors would still need to seek court approval to terminate the stay under section 362(d) in order to recover estate property serving as their collateral.  In third or more filings, the bankruptcy trustee would have to move quickly so as to reimpose the stay.

Second, Pennsylvania (as well, perhaps, as other states) permits secured creditors to proceed against the debtor in personam or in rem.  See Meritor Sav. Bank v. Peppertree Associates, Ltd., 1991 WL 91562, at *2 (E.D. Pa. 1991);  Bank of Pennsylvania v. G/N Enterprises, Inc., 316 Pa. Super. 367, 371 (1983); Berks-Lehigh

---

[6](...continued)

14

<u>Valley Production Credit Ass'n v. Gerhard</u>, 1988 WL 188440, 1 Pa. D. & C.4th 647 (Pa. Com. Pl. 1988).  If a secured creditor proceeds against the debtor by suit on a bond or upon a promissory note and obtains a judgment, then state law permits it to execute upon that judgment in order to recover its collateral.  <u>See</u> <u>Bank of Pennsylvania v. G/N Enterprises, Inc.</u>, 316 Pa. Super. at 372-73.

A construction of section 362(c)(3)(A), as written, permits mortgagee lawsuits, against the individual debtor (in any bankruptcy chapter) who has filed a second bankruptcy case within one year, to commence or continue until judgment, without bankruptcy court approval.   The debtor needs court approval to stay that litigation.  However, court approval under section 362(d) would still be needed by the mortgagee to execute upon estate property, but not as to non-estate property (such as postpetition property acquired by a chapter 7 debtor).  This result is another plausible balancing of competing interests: one that allows secured creditors to proceed against the debtor in a non-bankruptcy forum, despite the debtor's second bankruptcy filing, so as to obtain <u>in personam</u> judgments.

Third, termination of the automatic stay as to debtors, but not as to property of the estate, will allow all creditors, both secured and unsecured, in bankruptcy cases involving individual debtors to proceed in a number of instances, and so is not an empty gesture.  As just observed, all creditors bringing <u>in personam</u> suits are permitted to enter judgment and to execute upon non-estate property.  Furthermore, in situations where an individual debtor has mere possession of property without a right of title or even right of possession (such as a trespasser or holdover tenant), the bankruptcy stay under section 362(a) still arises.  <u>See</u> <u>In re Atlantic Business & Community Corp.</u>, 901 F.2d 325, 328

15

(3d Cir. 1990); In re 48th Street Steakhouse, Inc., 835 F.2d 427 (2d Cir. 1987), cert.

denied, 485 U.S. 1035 (1988).  But under the language of section 362(c)(3)(A), this

protection of mere possession ends in thirty days unless affirmatively extended by the

court.  For example, if the debtor's second bankruptcy filing within one year followed the

entry of a state court judgment in ejectment, the bankruptcy stay would terminate

automatically in thirty days to allow the property owner's recovery of the realty.

Accordingly, given the provisions of section 362(c)(3)(A) and the directive

that judges should construe the language of  the statute as written unless absurd, I agree

with the debtor in this contested matter (and with other courts that have considered this

issue) that the automatic stay remains in effect, insofar as the debtor's pre-bankruptcy

interest in 5425 North 11th Street and 2735 Opal Street became property of the estate

under section 541(a).  Thus, his failure to seek to extend the bankruptcy stay within thirty

days of filing does not alter that result.  To the extent the two objecting secured creditors

desire relief from the bankruptcy stay as to property of the estate, they must proceed by

motion under section 362(d) and Fed. R. Bankr. P. 4001(a).[7]  See, e.g., In re Moon, 339

B.R. at 672.  Any "defect" that the objectors perceive in section 362(c)(3)(A) must be

corrected by Congress, not the courts.  Accord In re Johnson-Allen, 871 F.2d 421, 428

(3d Cir. 1989) ("[I]t is not the function of this court to cure any perceived "defects" in

that legislation. That authority is granted to Congress alone."), aff'd sub nom.,

Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552 (1990).

_____

[7]Indeed, National City Mortgage Co. has already done so, and its motion shall be
heard shortly.

C.

The debtor also seeks to extend the bankruptcy stay as to him and his property against all creditors, even though he has not complied with the requirement in section 362(c)(3)(B) that he so request within thirty days of the commencement of his case. A number of courts have held that his failure to do so precludes any relief. See, e.g., In re Berry, 340 B.R. 636 (Bankr. M.D. Ala. 2006); In re Whitaker, 341 B.R. 336 (Bankr. S.D. Ga. 2006); In re Wright, 339 B.R. 474 (Bankr. E.D. Ark. 2006).

I agree with the objectors that once a portion of the bankruptcy stay established by section 362(a) has expired by virtue of section 362(c)(3), that portion cannot be "resurrected" as if it had never terminated. Therefore, if a debtor seeks to extend the stay beyond thirty days as permitted by section 362(c)(3)(B), it is incumbent upon him to insure that his motion is filed and heard within the thirty-day window.[8]

But this conclusion does not complete the analysis.

In In re Wedgewood Realty Group, Ltd., 878 F.2d 693, 701 (3d Cir. 1989), the Court of Appeals for the Third Circuit held that a bankruptcy judge has the power, under section 105(a) of the Bankruptcy Code, to enjoin a creditor from acting against property of the estate, even if that same creditor had previously obtained relief from the bankruptcy stay. See, e.g., Matter of Martin Exploration Co., 731 F.2d 1210, 1214 (5th

---

[8]Some courts have reasoned that if a debtor files a motion within thirty days, but the motion is not determined within the thirty day period as required by section 362(c)(3)(B), the court can still decide the motion and reimpose the stay, relying upon section 362(c)(4). See, e.g., In re Beasley, 339 B.R. 472 (Bankr. E.D. Ark. 2006). As the debtor here did not even file his motion within the thirty-day period, I need not reach that issue. I do note, however, that section 362(c)(4)(C) provides that a stay issued under that provision is not retroactive.

Cir. 1984); In re Orfa Corp. of Philadelphia, 170 B.R. 257, 267(E.D. Pa. 1994) ("[T]he

court concludes that an inadvertent failure to hold a preliminary hearing within thirty days

from the filing of a motion seeking relief from the stay automatically terminates the

automatic stay per § 362(e) although the bankruptcy court, upon proper application and

satisfaction of applicable standards, may reimpose the stay pursuant to its injunctive

powers under § 105(a).").

     The Wedgewood decision involved a creditor who had obtained stay relief

by operation of section 362(e), because no order continuing the stay had been issued

within thirty days from the filing of the motion for relief.   But the power of a bankruptcy

court to enjoin a creditor who previously obtained relief from the bankruptcy stay has not

been limited to matters involving section 362(e).   Thus, courts have held that the power

under section 105(a) to enjoin a creditor applies even when the statutory bankruptcy stay

had been terminated previously after a hearing on the merits.   See In re Twenver, Inc.,

149 B.R. 950 (D. Colo. 1993); In re Salzer, 1991 WL 119153 (Bankr. N.D. Ind. 1991);

see also In re Gledhill, 76 F.3d 1070 (10th Cir. 1996).[9]

     In this contested matter, the objecting creditors do not persuasively offer a

meaningful distinction between the expiration of a stay as to the debtor after thirty days

under section 362(c)(3) and the expiration of the stay as to property of the estate after

thirty days under section 362(e)(1).[10]   Therefore, when a portion of the bankruptcy stay

---

     [9]The Gledhill decision involved the use of Fed. R. Civ. P. 60(b)(6) (incorporated
by Bankruptcy Rule 9024) to vacate a previous lift stay order entered after a hearing on the
merits.  Rule 9024 does not apply in this instance.

     [10]Under the October 2005 amendments to the Bankruptcy Code, section 362(e)
has now become section 362(e)(1).

18

under section 362(a) has been terminated by virtue of section 362(c)(3), the debtor may

seek to enjoin creditors by virtue of section 105(a).  See In re Whitaker, 341 B.R. at 346-

47.

In approving the use of section 105(a) to enjoin a creditor who otherwise

has relief from the bankruptcy stay, the Third Circuit instructed that the debtor must meet

the traditional standards for injunctive relief:

> In order to obtain section 105(a) injunctive relief, the debtor,
> in accordance with Bankruptcy Rule 7065 and Fed. R. Civ. P.
> 65, has the burden of demonstrating to the court the
> following: substantial likelihood of success on the merits,
> irreparable harm to the movant, harm to the movant
> outweighs harm to the nonmovant, and injunctive relief would
> not violate public interest.

In re Wedgewood Realty Group, Ltd., 878 F.2d at 700-01.[11]  Other courts have since

followed this approach.  See, e.g., In re Orfa Corp. of Philadelphia, 170 B.R. at 267; In re

Salzer, 1991 WL 119153, at *4; In re Smith, 111 B.R. 102, 104-05 (Bankr. E.D.Pa.

1990).

---

[11]Of course, Fed. R. Bankr. P. 7001(7) provides that a party seeking injunctive
relief in bankruptcy court should proceed by filing a summons and complaint, thereby
commencing an adversary proceeding.  Neither Prime Funding nor National City have raised this
issue, so the procedural defect will be treated as waived.  See, e.g., In re Zolner, 249 B.R. 287,
292 (N.D. Ill. 2000); In re Mark Twain Marine Industries, Inc., 115 B.R. 948, 949 n.1 (Bankr.
N.D. Ill. 1990); In re Gain Electronics Corp., 117 B.R. 805, 806 n.2 (Bankr. D.N.J. 1990); In re
Wlodarski, 115 B.R. 53 (Bankr. S.D.N.Y. 1990); In re Stern, 70 B.R. 472, 473 n.1 (Bankr. E.D.
Pa. 1987).

In applying this injunctive relief standard, I agree with Prime Funding that the debtor has not met his evidentiary burden.[12]  First, he has shown no irreparable harm if in personam litigation were to continue against him, or if creditors were permitted to proceed against non-estate property.  See generally In re RBGSC Inv. Corp., 240 B.R. 536, 545 (Bankr. E.D. Pa. 1999), aff'd, 253 B.R. 369 (E.D. Pa. 2000). His evidence has focused entirely upon his real properties, which properties, insofar as they are part of the bankruptcy estate, remain protected under section 362(a).

Moreover, to the extent that the debtor was obligated to demonstrate that his proposed chapter 13 reorganization plan is likely to be approved, see In re Twenver, Inc., 149 B.R. at 953; In re Smith, 111 B.R. 102, 104-05 (Bankr. E.D. Pa. 1990), he has not done so.  His proposed plan relies upon the sale of one or more of his investment properties.  His uncorroborated personal valuation opinions—asserting that the properties

---

[12]Section 362(c)(3)(C) places a "clear and convincing" burden upon the debtor to extend the stay beyond thirty days in certain instances.  See In re Castaneda, 342 B.R. 90 (Bankr. S.D. Cal. 2006); In re Harris,, 2006 WL 1195396, at *3.  Where a debtor seeks injunctive relief under section 105(a) because he fails to timely seek relief under section 362(c)(3)(B), the evidentiary burden should not be lessened.

Here, the debtor complained that dismissal of his first case was due to the neglect of his former attorney in failing to file the requisite bankruptcy documents.  In such an instance, section 362(c)(3)(C)(i)(II)(aa) provides that the clear and convincing standard is inapplicable.  However, section 362(c)(3)(C)(i)(III) imposes a clear and convincing standard if there has been no material change in the debtor's "financial or personal affairs" since dismissal or any other reason to believe that this new chapter 13 case will conclude with a completed confirmed plan.  See In re Castaneda.

The debtor's financial circumstances between dismissal of his first case and commencement of the second appear unchanged.  It is doubtful that Congress intended that a debtor's engagement of new counsel in the second case would afford the debtor relief from section 362(c)(3)(C)(i)(III).  See In re Ellis, 339 B.R. 136, 141 (Bankr. E.D. Pa. 2006).  Thus, the debtor's evidentiary burden under section 105(a) was heavy.  Moreover, the debtor's evidence did not even meet the traditional evidentiary burden for injunctive relief: preponderance of the evidence.  See generally UBS PaineWebber, Inc. v. Aiken, 197 F. Supp. 2d 436, 440 (W.D.N.C. 2002).

have tripled or more in value in the past year or two—are insufficient to carry his burden.

See In re Brown, 244 B.R. 603, 611-612 (Bankr. W.D. Va. 2000) (testimony of a debtor

as to value, while admissible, may not be credible if the debtor offers no basis for his

valuation); see generally In re Glaser, 2002 WL 32375007, at *5 (Bankr. E.D. Va. 2002)

("Although owners have historically been allowed to offer opinion testimony as to the

value of their real and personal property, the probative value of such testimony is

frequently not very high.") (footnote omitted).  His proposed plan has no sale deadlines.

Moreover, he has been unable to sell some of these properties on his own, and he has not

engaged any broker or real estate agent, let alone provided a signed sale agreement.

Thus, based upon the evidence presented, this plan is too speculative and so is unlikely to

be approved.  See In re Calvanese, 169 B.R. 104, 108-10 (Bankr. E.D. Pa. 1994) (and

cases cited); see generally In re Investment Company of The Southwest, Inc., 341 B.R.

298, 315 (B.A.P. 10th Cir. 2006) ("[T]here must be some evidence that Debtor's overall

plan to sell part or all of its inventory is reasonable, based on either past performance or

identifiable factors indicating the likelihood of probable future performance, or both.").

      Accordingly, the debtor is not entitled to relief under section 105(a).  See In

re Smith.

      An appropriate order shall be entered.

21

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                     :      Chapter 13

CLIFTON WILLIAMS, Jr.                     :

          Debtor                          :      Bankruptcy No. 06-10928BF

..................................................

ORDER

..................................................

          AND NOW, this 21st day of June 2006, for the reasons stated in open court,

it is hereby ordered that:

          1. The bankruptcy stay as to the debtor and property of the debtor, but not

as to property of the estate, has been terminated pursuant to 11 U.S.C. § 362(c)(3); and

          2. The debtor's request for injunctive relief under section 105(a) is denied.


_____
          BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Clifton Williams, Jr.
8557 Fayette Street
Philadelphia, PA 19150

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106

Robert J. Wilson, Esq.
Comroe Hing LLP
1608 Walnut Street, Suite 300
Philadelphia, PA 19103-5446

Kristina G. Murtha, Esq.
Goldbeck, McCafferty & McKeever
Mellon Independence Center
701 Market Street, Suite 500
Philadelphia, PA 19106

Leslie E. Puida, Esq.
Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532

Andrew Spivack, Esq.
Phelan Hallinan & Schmieg, LLP
One Penn Center at Suburban Station
16 & JFK Blvd, Suite 1400
Philadelphia, PA 19103