UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :        Chapter 13

CLIFTON WILLIAMS, JR.                              :

      Debtor                                       :        Bankruptcy No. 06-10928BF

...............................................

MEMORANDUM

...............................................

Presently before me is the motion of National City Mortgage Company to annul the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1) and thereby validate a foreclosure sale of real property located at 5420 North 11th Street, Philadelphia, Pennsylvania. This foreclosure sale took place on March 7, 2006, one day after the debtor commenced the above-captioned chapter 13 case. The debtor opposes any such relief.

An evidentiary hearing was held and the following facts were proven.

I.

The debtor filed a voluntary petition under chapter 13 on March 6, 2006. This petition was filed <u>pro se</u>.[1] At the time of the bankruptcy filing, the debtor resided with his spouse at 8557 Fayette Street, Philadelphia, Pennsylvania.

---

[1] The debtor had previously filed a chapter 13 petition in September 2005, with counsel. That petition was dismissed in November 2005 due to his failure to file all required documents. Ex. M-5.

In addition to his residence, the debtor—who is a long-time mail handler for the United States Postal Service, Ex. M-7 (schedule I)—owns four other Philadelphia properties that were purchased by him for investment beginning in 2002.[2] Id. (schedule A). Among those investment properties is 5420 North 11th Street, Philadelphia, Pennsylvania; another is located at 110 West Champlost Street, Philadelphia, Pennsylvania. The mortgagees of these two properties obtained judgments in state court and scheduled foreclosure sales for March 7, 2006.

After the debtor filed his bankruptcy petition on March 6, 2006, he did not notify the mortgagees of this filing. Instead, the debtor testified that on the morning of March 7, 2006, he traveled to the location where the sheriff of Philadelphia County conducts foreclosure sale auctions and provided a copy of his bankruptcy petition to an employee of the sheriff's office. Believing that this was sufficient to stop the two scheduled sales, the debtor left prior to the auction.

Employees of law firms representing the mortgagees of both properties testified that they were unaware of the debtor's March 6th bankruptcy filing until after the auction sale took place. Ms. Barbara Groark, a para-professional with the law firm that represented National City in the foreclosure action, acknowledged that her law firm may check bankruptcy court records prior to a foreclosure sale and will stay a sale based upon a bankruptcy filing revealed by those records. If her law firm conducted such research prior to the March 7th sale, it did not reveal Mr. Williams' bankruptcy filing.

Moreover, the law firm employees that attended the March 7th foreclosure auction recalled that an employee of the Philadelphia sheriff announced prior to the sales

---

[2]Ironically, the debtor obtained these four properties upon their foreclosure.

that certain properties would not be auctioned that day, due to bankruptcy filings by their owners; however, their records did not reveal that the North 11th Street property was among them.[3]  Therefore, that property was sold at auction on March 7, 2006 to the mortgagee for the amount of its judgment: approximately $45,000.[4]

On or before March 16, 2006, National City learned of the debtor's bankruptcy filing, because on March 16th it filed the instant motion to annul the stay. On May 15, 2006, the Philadelphia sheriff deeded the property to Fannie Mae. Ex. M-12.[5]

The debtor's disclosed projected monthly income and expenses on his bankruptcy schedules reflect net income after expenses of only $100. Ex. M-7 (Schedules I and J). These expenses include, however, monthly mortgage payments on two of his

---

[3]Counsel for the mortgagee on the Champlost Street property stated that his client had postponed the March 7th sale in order to reassess the amount of the foreclosure judgment, and was unaware of any bankruptcy filing by the debtor.

[4]Although the foreclosure auction took place, National City filed a proof of claim. Ex. M-2. That claim is in the amount of $45,254.62, based upon a mortgage dated May 22, 2002. Id. Also in evidence was a copy of the state court foreclosure docket. Ex. M-11. The docket reflects that the original foreclosure judgment was $45,254.62, but the judgment was amended on February 6, 2006 to $52,664.47. Id. There was no explanation why National City's proof of claim was filed for the lower amount.

[5]The recordation of this deed arose from the unusual procedural posture of this contested matter.
   When National City first sought annulment of the bankruptcy stay, the debtor did not file a timely response and the movant prevailed by default under Fed. R. Bankr. P. 7055 and 9014. Thereafter, the debtor filed a motion to set aside this default to which National City failed to file any time response. Thus, the debtor prevailed by default, the annulment order was vacated and the motion relisted for a hearing on the merits.
   The recordation of the sheriff's deed occurred after the original annulment motion was granted but before it was vacated. Given that National City rather than Fannie Mae is the moving party in this contested matter, and based upon the memorandum filed by the movant, there appears to be no contention that Fannie Mae is entitled to relief under section 549(c).

four investment properties, but not the North 11th Street realty, totaling $512. Ex. M-7 (Schedule J).

The debtor has proposed a chapter 13 reorganization plan calling for him to pay only $100 per month to the chapter 13 trustee "for 36 months or until the sales of property take place as described in paragraph 3 of this plan." Ex. M-8. The proposed plan further provides that the debtor will obtain an agreement of sale for the North 11th Street property by November 30, 2006, for an amount not less than $85,000. The secured claim of National City Mortgage Co. (estimated by the debtor in his schedules to be $45,000) will be repaid in full from the proceeds of sale, with the balance used to pay other creditors. Id., ¶ 3. The plan may also provide that the debtor will obtain an agreement of sale on the Champlost Street property by November 30, 2006, in an amount not less than $90,000. Id., ¶ 3.[6] Citi Mortgage Corp. (estimated by the debtor to hold a claim in the amount of $35,000) would be repaid in full from the proceeds of this sale. Id., ¶ 3.[7]

The debtor has attempted to sell one or more of his investment properties prior to his bankruptcy filing without success. He also presented no evidence of a valid offer to buy either the North 11th Street property or any of his other properties since his bankruptcy filing.

---

[6]The debtor's plan does not actually require the sale of Champlost Street. Paragraph 3 states in one sentence that he "anticipates" such a sale; and in another sentence proposes that his case "will be subject to dismissal" if no agreement of sale is signed either as to North 11th Street or Champlost Street by "November 390 [sic], 2006." Id., ¶ 3.

[7]While the debtor's plan calls for the eventual sale of one or more of his properties, there is no deadline for the sale of any property, only a deadline for signing an agreement of sale.

4

The debtor opined that the North 11th Street property was worth $90,000. See generally United States v. 68.94 Acres of Land, 918 F.2d 389, 397 (3d Cir. 1990) (owner of property is qualified to express an opinion as to its value). However, he offered no expert testimony or appraisal reports to corroborate this opinion. Moreover, he has not tendered any post-bankruptcy payments to National City.

II.

In general, the filing of a bankruptcy case prior to a foreclosure sale acts to stay that execution by virtue of section 362(a). See, e.g., In re Ward, 837 F.2d 124 (3d Cir. 1988). Thus, a foreclosure sale which occurs post-petition may be invalid as a violation of the bankruptcy stay. Id.

As noted above, National City now seeks to have the bankruptcy stay annulled. Section 362(d) permits the automatic stay to be "terminat[ed], annull[ed], modif[ied] or condition[ed]." In general, whether to grant relief from the automatic stay under section 362(d), including the decision whether to annul the stay, is left to the discretion of the bankruptcy court. In re National Environmental Waste Corp., 129 F.3d 1052, 1054 (9th Cir. 1997).

The Third Circuit Court of Appeals has explained that "the inclusion of the word 'annulling' in the statute indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be void ab initio." In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994). In a subsequent decision, the Court of

5

Appeals provided the following analysis of the bankruptcy stay and the power of a bankruptcy court to retroactively terminate it:

> The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." Maritime Elec. Co. v. United Jersey Bank, 959 F.2d [1194] at 1204 [3d Cir. 1991].
>
> The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed. The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case. Id. A party in interest may obtain relief from stay, pursuant to § 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause. 11 U.S.C. § 362(d)(1).
>
> The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." Maritime, 959 F.2d at 1203, 1206. Thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." Id. at 1206. Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge is granted or denied. 11 U.S.C. § 362(c). Once a stay is in effect, without relief from the bankruptcy court, "the parties themselves [can]not validly undertake any judicial action material to the ... claim against" the debtor. Id. at 1207. <u>This includes the filing of motions, which are void ab initio, unless the bankruptcy court later grants retroactive relief.</u> [FN6] Id. at 1207, n. 13.
>
>> FN6. Generally, judicial actions and proceedings against the debtor are void ab initio absent relief from the stay. Id. We have,

> however, recognized that section 362(d), which
> requires the bankruptcy court to grant relief
> from the stay under certain circumstances and
> permits such relief to be applied retroactively,
> would allow the bankruptcy court to grant
> annulment of a stay, thereby making acts in
> violation of the stay voidable, rather than void
> ab initio.  See In re Siciliano, 13 F.3d 748,
> 750-51 (3d Cir. 1994).

Constitution Bank v. Tubbs, 68 F.3d 685, 691-92 (3d Cir. 1995) (emphasis added); accord, e.g., Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998).

In determining whether to exercise such discretion and retroactively terminate the stay, courts have noted that annulment of the stay is appropriate only in limited circumstances.  See, e.g., In re Soares, 107 F.3d 969, 977 (1st Cir. 1997); In re Albany Partners, Ltd, 749 F.2d 670, 675 (11th Cir. 1984) ("[T]he important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay."); In re Stockwell, 262 B.R. 275, 280 (Bankr. D. Vt. 2001).  In order to help identify such circumstances, some courts have focused upon the following two factors:

> (1) whether the creditor was aware of the bankruptcy petition;
> and (2) whether the debtor engaged in unreasonable or
> inequitable conduct, or prejudice would result to the creditor.

In re National Environmental Waste Corp., 129 F.3d at 1055.

Other courts, in analyzing the factors needed to justify annulling the stay, parse these two factors into more specific elements:

> It is well recognized that a determination of whether to grant
> relief from stay retroactively is within the wide latitude of the
> Court with each decision being considered on a case-by-case
> basis. . . .  The party seeking retroactive lift stay relief has the

7

> burden of proving that the action taken in violation of the stay falls within the narrow exceptions to the rule voiding actions taken in violation of the stay. . . . Similarly, under § 362(g), the debtor has the burden of proof with respect to showing equitable grounds for denying the requested relief. . . .
>
> In order to determine whether the circumstances are sufficiently compelling to warrant nunc pro tunc lift stay relief, courts have considered a variety of factors:
>
>> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

In re Stockwell, 262 B.R. at 280-81 (citations omitted); see also In re Williams, 257 B.R. 297, 301 (Bankr. W.D. Mo. 2001).

In sum, courts have generally concluded that annulment of the stay should be limited to circumstances demonstrating "unfair prejudice" to a creditor, including consideration whether the creditor seeking annulment acted without knowledge of the bankruptcy filing, and had a valid legal basis for lifting the automatic stay at the time that the challenged action occurred but failed to request such relief because it was unaware of any need to do so. See In re Syed, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999).

In contrast to annulling the stay, granting prospective relief from the bankruptcy stay is not so limited. Section 362(d)(1) authorizes such relief when the movant demonstrates cause, see generally In re Ward, 837 F.2d 124, 128 (3d Cir. 1988);

In re Skipworth, 69 B.R. 526, 527 (Bankr. E.D. Pa. 1987), and the debtor does not demonstrate that the interests of the movant are adequately protected. 11 U.S.C. § 362(g)(2). See also, e.g., In re Price, 370 F.3d 362, 373 (3d Cir. 2004); In re Skipworth; In re Liona Corp., N.V., 68 B.R. 761, 766 (Bankr. E.D. Pa. 1987). Section 362(g) imposes upon the party opposing relief from the stay the burden of proof on all issues other than equity. Therefore, the debtor has the burden of persuasion on the issue of adequate protection.

For the following reasons, I am persuaded by the evidence that National City is entitled to have the bankruptcy stay terminated prospectively, but that annulment of the stay is not warranted.

### III.

At the outset, I agree with National City that to the extent it holds a security interest on the North 11th Street realty, that interest is not being adequately protected. Evidence of a debtor's postpetition default in mortgage payments meets the mortgagee's initial burden of production in establishing cause for relief under section 362(d)(1). See, e.g., In re Price, 370 F.3d at 373 ("A persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay."); In re Skipworth; In re Wright, Egan & Assocs., 60 B.R. 806 (Bankr. E.D. Pa. 1986); In re Keays, 36 B.R. 1016 (Bankr. E.D. Pa. 1984); see also In re Shariyf, 68 B.R. 604 (E.D. Pa. 1986). Upon the movant's meeting its initial burden of production, the debtor must then come forward with evidence demonstrating that the mortgagee's secured interest is

adequately protected. See, e.g., In re Hinchliffe, 164 B.R. 45, 48-49 (Bankr. E.D. Pa. 1994); In re Skipworth. Such adequate protection may be provided in a variety of ways. 11 U.S.C. § 361.

In general, adequate protection may be demonstrated by: the existence of an equity cushion, see e.g., In re Indian Palms Associates, Ltd., 61 F.3d 197, 207-08 (3d Cir. 1995); Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane, 14 B.R. 542 (E.D. Pa. 1981), the creation of a replacement lien on other, unencumbered property, 11 U.S.C. § 361(2); see, e.g., In re Ahlers, 794 F.2d 388, 398 (8th Cir. 1986), rev'd on other grounds, 485 U.S. 197 (1988), cash payments to the secured creditor, 11 U.S.C. § 361(1); see, e.g., In re Price, 370 F.3d at 373; In re McKillips, 81 B.R. 454, 458-59 (Bankr. N.D. Ill. 1987), or, a viable plan of reorganization which meets the debtor's statutory obligations to the secured creditor, see In re Philadelphia Consumer Discount Co., 37 B.R. 946, 949 n.9 (E.D. Pa. 1984); In re Skipworth.

In this contested matter, the only offer of adequate protection from this debtor comes from his proposed sale of the North 11th Street realty. In essence, the debtor maintains that there is a significant equity cushion—i.e., the value of the collateral exceeds the amount due the secured creditor and all senior liens, see In re Indian Palms Associates, Ltd., 61 F.3d at 207— such that National City's allowed secured claim would be repaid in full upon the sale of the realty.

The debtor has the burden of demonstrating the existence of an equity cushion. See In re Elmira Litho, Inc., 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994). As noted above, however, the debtor simply offered his uncorroborated opinion that the value of the North 11th Street property is $90,000. But see In re Brown, 244 B.R. 603,

611-612 (Bankr. W.D. Va. 2000) (testimony of a debtor as to value, while admissible, may not be credible if the debtor offers no basis for his valuation); In re Glaser, 2002 WL 32375007, at *5 (Bankr. E.D. Va. 2002) ("Although owners have historically been allowed to offer opinion testimony as to the value of their real and personal property, the probative value of such testimony is frequently not very high.") (footnote omitted).

Had the debtor produced evidence of a signed, non-contingent real estate sales agreement, the proceeds of which would repay the mortgagee in full within a reasonable time and which insured the property pending the closing, the secured interest of National City might be adequately protected. See Bank Hapoalim B.M. v. E.L.I., Ltd., 42 B.R. 376, 379 (N.D. Ill. 1984) (finding that creditor's interest in collateral would be adequately protected where collateral's value, as evidenced by the contract price for a proposed sale of the collateral, exceeded creditor's claim); In re Liona Corp., N.V., 68 B.R. at 767 (where property is to be liquidated, the likelihood of a reasonably prompt sale is germane to the issue of adequate protection).

Instead, not only is the debtor's valuation opinion unpersuasive proof of an equity cushion, but his proposed chapter 13 plan calls for him to sell this property without an absolute deadline. Indeed, he has been unsuccessful in such efforts before; and he offers no evidence that a real estate broker is currently marketing the property. Moreover, his plan proposes merely that his bankruptcy case will be dismissed if his sale efforts remain unsuccessful. This coupled with his failure to tender any postpetition payments to National City places the entire risk of an unsuccessful sale upon the creditor.

Therefore, I conclude that National City is entitled to prospective relief under section 362(d)(1).

11

However, while the debtor has failed to demonstrate adequate protection of National City's security interest, National City has not offered sufficient evidence to justify the unusual remedy of retroactive lifting of the bankruptcy stay. See In re Soares, 107 F.3d at 977.

I accept the movant's proffered evidence that it neither knew nor should have known of the debtor's bankruptcy filing on March 7th.[8]  Such lack of knowledge means that National City did not knowingly violate the bankruptcy stay; but it does not, by itself, justify annulment of the stay. See Scrima v. John Devries Agency, Inc., 103 B.R. 128, 135 (W.D. Mich. 1989); see generally In re Bright, 338 B.R. 530, 535 (B.A.P. 1st Cir. 2006) ("In deciding whether to retroactively annul the automatic stay, bankruptcy courts are especially concerned with allegations of bad faith."); In re Dupuy, 308 B.R. 843, 848 (Bankr. E.D. Tenn. 2004) (lack of knowledge must be coupled with unfair prejudice to warrant annulment of the automatic stay).

National City offered no evidence as to the value of its collateral; thus, while I was unpersuaded by the debtor's opinion as to an equity cushion, I also cannot conclude that there is no equity under section 362(d)(2). See generally In re Indian Palms Associates, Ltd., 61 F.3d at 207 (explaining the difference between an equity cushion in section 362(d)(1) and equity under section 362(d)(2)).  Accordingly, I cannot find that the debtor's reorganization plan premised upon the sale of the realty to repay National City was filed in bad faith.

---

[8] I reject the debtor's suggestion that mortgage companies and/or the law firms that represent them have an affirmative duty to discover bankruptcy filings by foreclosure defendants.

In addition, the dismissal of the debtor's prior bankruptcy filing does not demonstrate that this second filing was a bad faith serial filing. His failure to file the required bankruptcy documents, which triggered dismissal of that earlier petition, may not have been willful. See generally In re Burgart, 141 B.R. 90 (W.D. Pa. 1992); In re Walker, 171 B.R. 197, 204-05 (Bankr. E.D. Pa. 1994); In re Patel, 48 B.R. 418, 419 (Bankr. M.D. Ala. 1985). No evidence was offered on this point.

The evidence presented also revealed that the debtor is employed full-time and has sufficient income that he could afford to pay postpetition mortgage payments to National City if he had so chosen. The creditor's proof of claim, Ex. M-2, revealed that monthly mortgage payments were $435.70. The debtor has more than $600 in excess income over expenses (inclusive of payment of the mortgage on his residence, but exclusive of the mortgage obligations on his investment properties).

In other words, had National City known of the debtor's bankruptcy filing on March 6th, it offered no evidence that it could have obtained relief from the bankruptcy stay on that date immediately after the debtor's bankruptcy filing. Subsequent events, including the terms of the debtor's proposed plan, have demonstrated the debtor's failure to adequately protect National City's security interest. But the congressional policies implicit in section 362 counsel that retroactive relief is not appropriate because the debtor after a bankruptcy filing elects not to adequately protect a security interest. See In re Soares, 107 F.3d at 977 (" If retroactive relief becomes commonplace, creditors--anticipating post facto validation--will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated.").

Finally, National City offered no evidence of prejudice or unnecessary expense that occurred before it learned of the debtor's bankruptcy filing on or before March 16th. Accordingly, an order shall be entered granting National City prospective relief only from the bankruptcy stay.[9]

---

[9]The motion filed by National City requested modification and annulment of the stay. Fed. R. Bankr. P. 4001(a) renders a lift-stay motion a contested matter under Rule 9014. Rule 9014(c) incorporates Fed. R. Bankr. P. 7054 into all contested matters. Rule 7054 incorporates Fed. R. Civ. P. 54(c). And Rule 54(c) provides in relevant part:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

Thus, even though National City sought annulment and modification under section 362(d), rather than termination of the stay, the evidence entitles it to such relief. See, e.g., South Falls Corp. v. Rochelle, 329 F.2d 611, 619 (5th Cir. 1964) (" F. R. Civ.P. 54(c) . . . lays down the standard that except for default decrees the form of relief and the nature of the order to be entered is to be determined by what the facts establish, not what the lawyer prays for.").

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                  :    Chapter 13

CLIFTON WILLIAMS, JR.                  :

    Debtor                          :    Bankruptcy No. 06-10928BF

................................................

ORDER

................................................

AND NOW, this 22nd day of August 2006, for the reasons stated in the accompanying memorandum, it is hereby ordered that the motion of National City Mortgage Company for relief under section 362(d) is granted in part.  National City (and/or its agents, successors in interest or assigns) can exercise its non-bankruptcy law rights to foreclose upon and recover possession of the real property located at 5420 North 11th Street, Philadelphia, Pennsylvania.

National City's request to retroactively terminate the bankruptcy stay in order to validate its post-bankruptcy foreclosure sale is denied.

*[signature: Bruce Fox]*

                              BRUCE FOX
              United States Bankruptcy Judge

copies to:

Mr. Clifton Williams, Jr.
8557 Fayette Street
Philadelphia, PA 19150

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St. Albans Avenue
Newtown Square, PA 19073

Leslie E. Puida, Esq.
Goldbeck, McCafferty & McKeever
Mellon Independence Center
701 Market Street, Suite 500
Philadelphia, PA 19106